UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ANTHONY J. VALADEZ,

        Plaintiff,

  v.

COUNTY OF SIERRA, CALIFORNIA
SIERRA COUNTY JAIL, SIERRA
COUNTY SHERIFF'S DEPARTMENT,
WESTERN SIERRA MEDICAL CLINIC,
JUDGE WILLIAM PANGMAN, SHERIFF
LELAND ADAMS, CORPORAL LOU
FOXWORTHY, LYNN JAKOBS, FRANK
J. LANG, and DOES 1-20,

        Defendants.

NO. CIV. S-03-1553 WBS PAN-PS

MEMORANDUM AND ORDER
RE: OBJECTIONS TO MAGISTRATE
JUDGE'S FINDINGS AND
RECOMMENDATIONS

----oo0oo----

        Plaintiff brings claims against defendants for (1) violations of his Fourth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983; (2) conspiracy to violate plaintiff's civil rights under 42 U.S.C. § 1985; (3) neglect or failure to prevent a conspiracy to violate plaintiff's constitutional rights under 42 U.S.C. § 1986; (4) false imprisonment; (5) violations of rights secured by the California Constitution; (6) violation of California Civil Code § 52.1; and (7) what plaintiff

1

characterizes as negligent and intentional infliction of physical and emotional harm, which the court interprets as claims for negligence and intentional infliction of emotional distress. Defendants have filed two separate motions for summary judgment as to all plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.

I.   Factual and Procedural Background

On or about May 6, 2002, plaintiff Anthony Valadez was injured in a bus accident. (Pl.'s Am. Response to Defs. County of Sierra, California Sierra County Jail, Sierra County Sheriff Department, Sheriff Leland Adams, and Corporal Lou Foxworthy's Statement of Undisputed Facts ("PRSUF1") ¶ 5). As a result of the accident, plaintiff claims he experienced neuropathic pain in his neck, back, and upper right shoulder. (Am. Decl. of Anthony Valadez in Supp. of Opp'n to Mot. For Summ. J. By Sierra County, et al. ("Am. Valadez Decl.") ¶ 1).

Thereafter, on or about July 12, 2002, Judge William Pangman of the Superior Court of California for the County of Sierra sentenced Valadez to incarceration for six counts of contempt of court. (Pl.'s Am. Resp. to Defs. Western Sierra Medical Clinic, Inc., Lynn Jakobs, and Frank Lang Statement of Undisputed Facts ("PRSUF2") ¶ 1). Valadez thoroughly read the order and signed it. (Id. ¶ 3). The order required Valadez to report to the California Sierra County Jail ("the Jail") at 9:00 a.m. on Friday, August 9, 2002 to begin serving a five-day sentence. (Id. ¶ 4).

Valadez reported to the Jail on August 9, 2002. (Id. ¶ 7). Prior to being booked, Valadez complained that he was in

2

pain from his injuries from the bus accident. (Id. ¶ 8). Less than half an hour from this initial complaint, Valadez was seen by personnel from Western Sierra Medical Clinic ("the Medical Clinic"). (Id. ¶ 9). Valadez was cleared for incarceration during that examination and placed in a cell. (Id. ¶ 10). While in the cell, Valadez claims he suffered extreme and severe pain. (Am. Valadez Decl. ¶ 1). He requested medical assistance numerous times and was seen by medical personnel once in the afternoon and once that evening. (PRSUF2 ¶¶ 11-12). After the afternoon visit, Valadez was prescribed pain medication, which he took. (Id.). After the evening visit, he was released due to his medical condition at approximately 9:00 p.m. and told to report back on August 16, 2002 at 9:00 a.m. (Id. ¶¶ 13, 52).

  Before Valadez was released, Judge Pangman called Cameron Meadows, a correctional officer at the Jail, and told her that Valadez was only to receive credit for the hours he actually served as opposed to credit for a full day. (Declaration of Cameron Meadows in Supp. of Mot. For Summ. J. by Defs. County of Sierra et al. ("Meadows Decl.") ¶ 3; Declaration of Cameron Meadows Submitted With Pl.'s Response to Def.'s Statement of Undisputed Material Facts in Supp. Of Opp'n to Mot. for Summ. J. By Western Sierra Medical Clinic ("Meadows Dep.") 10:14-24). Officer Bierwerth, presumably unaware of Judge Pangman's order, told Valadez that he would receive one full day's credit for serving 12 hours in jail when he released him. (Deposition of William Bierwerth Submitted With Notice of Submission of Dep. Trs. in Supp. of Opp'n to Mot. for Summ. J. By Western Sierra Medical Clinic ("Biewerth Dep.") 91:20-92:11 ). Leland Adams,

3

the Sheriff of Sierra County, also testified in his deposition that inmates were often credited with a full day's time served for serving any portion of a day. (Deposition of Leland Adams Attached to Pl.'s Notice of Supplemental Submission of Dep. Trs. ("Adams Dep.") 51:3-18). However, Adams later clarified that he did not know how time served was calculated in the Jail and noted that he was aware that the court could sentence persons by the hour. (Id. 59:4-15).

Valadez reported back to jail on August 16, 2002. (PGSUF2 ¶ 14). He was examined by Medical Clinic personnel, then released and told to report back on August 23, 2002. (Id. ¶¶ 14-16).

On August 23, 2002, Valadez again reported to the Jail. (Id. ¶ 17). While Valadez's attorney, J. Lon Cooper, waited to meet with Judge Pangman, Valadez waited in the hallway of the Sierra County Sheriff's Department ("the Sheriff's Department") for approximately two hours before going to the Medical Clinic. (Id. ¶ 20). A person from the Medical Clinic sent him back to the Jail. (Declaration of Mark Walker in Supp. of Opp'n to Mot. for Summ. J. ("Walker Decl.") ¶ 4). Back at the Jail, sheriff's deputy Alison Baca told Valadez to wait in the hallway or outside the courthouse while Judge Pangman heard other matters on his calendar. (PRSUF2 ¶¶ 19, 21; Walker Decl. ¶ 9). While Valadez waited, Mr. Cooper would come out of the courthouse to update him on the status of his meeting with the judge once or twice every hour. (PRSUF2 ¶ 22).

Later that afternoon, Mr. Cooper met with Judge Pangman. (Id. ¶ 23). After the meeting, Sheriff's Department

4

personnel informed Valadez that he would not be remanded into custody that day and that he should report back on September 13, 2002. (Id. ¶ 25).

Between August 9, 2002 and September 13, 2002, Valadez obtained a letter from his primary care physician, Dr. Wayne Matthews, intended to prevent Valadez's incarceration. (Deposition of Wayne C. Matthews, M.D. Submitted With Notice of Submission of Dep. Trs. in Supp. of Pl.'s Opp'n to Mot. for Summ. J. by Western Sierra Medical Clinic ("Matthews Dep.") 31:15-21). In that letter, Dr. Matthews failed to specify any limitations or conditions necessary for incarcerating Valadez in light of his medical condition. Dr. Matthews later testified in his deposition that he would defer any determination of whether Valadez was fit to be incarcerated in the Jail to a medical practitioner who had knowledge of the Jail facilities and the opportunity to assess Valadez at the time of incarceration. (Id. 32: 2-11; 37:9-17). However, he clarified that he might not give such deference to another medical practitioner's determination if it were contested. (Id. 68:16-25). In a later declaration, Matthews further stated that "it would have been appropriate" for Valadez to have been treated by a physician at a hospital. (Declaration of Dr. Wayne C. Matthews, M.D., A.B.F.P. in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Matthews Decl.") ¶ 8). Valadez never asked any other doctor to provide a list of conditions under which he could be suitably incarcerated. (PRSUF2 ¶ 35).

On September 13, 2002, Valadez again reported to the Jail at about 9:00 a.m. (Id. ¶ 26). He claims he was suffering

5

from neuropathic pain in his neck, back, and upper right shoulder and that he walked with a cane and cried all day. The pain was allegedly so bad that he could not eat. (Id. ¶53). Around 11:30 a.m. he was examined by Lynn Jakobs, a nurse from the Medical Clinic. (Id. ¶¶ 27-28). Ms. Jakobs consulted with Frank J. Lang, the executive director of the Medical Clinic and a fellow nurse, as to Valadez's fitness for incarceration. (Deposition of Frank J. Lang Submitted With Pl.'s Notice of Submission of Dep. Trs. in Supp. of Opp'n to Mot. for Summ. J. By Western Sierra Medical Clinic ("Lang Dep.") 9:10-13; 24:7-15). After this consultation, Ms. Jakobs determined that Valadez was fit to be incarcerated in the Jail and that the stay would not adversely affect his chronic condition. (PRSUF2 ¶ 30).  She directed Jail personnel to provide Valadez with two mattresses on his bed, a padded chair, and extra pillows. (Id. ¶ 54). Thereafter, then-Sergeant Lou Foxworthy was informed that Ms. Jakobs had determined that Valadez was medically fit for incarceration in the Jail. (Id. ¶ 31). Valadez was booked into the Jail at about 12:00 p.m. (Id. ¶ 26).

That same day, September 13, 2002, Valadez made two written complaints regarding pain he was suffering from his pre-existing medical condition. (Id. ¶ 36). Both times then-Sergeant Foxworthy instructed officer William Bierwerth to inform Valadez that the matter had been addressed. (Id. ¶ 37). Officer Bierwerth relayed the messages to Valadez. (Id. ¶ 38). Thereafter, Valadez filled out several more written requests for medical attention and transfer to Sierra Nevada Hospital. (Am. Valadez Decl. ¶ 4). His requests were all relayed to the Medical

6

Clinic. (Declaration of Bill Bierwerth in Supp. of Mot. for Summ. J. by Sierra County et al. ("Bierwerth Decl.") ¶ 7).

On September 14, 2002, Ms. Jakobs again examined Valadez. During the examination she offered to give Valadez a shot of pain medication and to provide him with medicine for his upset stomach. (PRSUF2 ¶¶ 40-41). Valadez declined. (Id. ¶ 41). Jakobs then prescribed him Vicodin for his pain and determined that he did not need to be hospitalized. (Id. ¶¶ 43-44).[1] Valadez was, however, never provided a padded chair and extra pillows, and was not given an extra mattress until September 15, 2002. (Id. ¶¶ 57-58).

Valadez claims that the pain he suffered from his condition spread to his arms, legs, and feet throughout his incarceration. (Am. Valadez Decl. ¶ 1). He claims the pain prohibited him from eating and drinking and caused him to vomit repeatedly. (Id.). The videotape submitted with the transcript of the declaration of Officer Bierwerth ("the videotape") shows Valadez refusing water and food and frequently vomiting in the toilet provided him. (Bierwerth Decl., Attach. (Videotape)). In the videotape, he also complains of an inability to eat and drink and requests to be transferred to a hospital. (Id.). The

---

[1] Valadez disputes that Ms. Jakobs made the determination that he did not need to be hospitalized, suggesting instead that such a decision would be made by prison personnel. (PRSUF 2 ¶ 44). However, the deposition testimony he cites for this proposition, demonstrates, at best, that the Jail does in fact rely on medical personnel - in this case Ms. Jakobs - to make such determinations. (See Deposition of Lynn Jakobs Submitted With Pl.'s Notice of Submission of Dep. Trs. in Supp. of Opp'n to Mot. for Summ. J. By Wester Sierra Medical Clinic ("Jakobs Dep.") 151:14-18, 152:4-153:2; Deposition of Lou Foxworthy Submitted With Pl.'s Notice of Supp. Dep. Trs. ("Foxworthy Dep.") 111:11-13).

7

1  videotape also shows Officer Bierwerth conversing over the
2  telephone with someone from the Medical Clinic regarding
3  Valadez's condition and encouraging Valadez to eat and drink.
4  (Id.).  Despite Valadez's apparent pain, he was not released or
5  transferred to a hospital or another jail facility because Ms.
6  Jakobs had medically cleared him for incarceration.  (Declaration
7  of Lou Foxworthy in Supp. of Sierra County Defs.' Mot. for Summ.
8  J. ("Foxworthy" Decl.") ¶ 5).[2]

9       On September 17, 2002, Officer Bierwerth informed
10 Valadez that he would be released at about noon that same day and
11 instructed him to begin preparing for that release.  Valadez
12 requested an ambulance to take him to the hospital on his
13 release, but later declined Beirwerth's offer to call him one
14 after he realized there was no ambulance waiting for him outside.
15 (Id. ¶ 45; Am. Valadez Decl. ¶ 9).

16      Valadez went to a hospital and was examined by Dr.
17 Vance J. Vantassell around 3 p.m. that same day.  (Deposition of
18 Vance J. Vantassell, M.D. Submitted With Pl.'s Resp. to Def.
19 Statement of Undisputed Material Facts in Supp. of Opp'n to Mot.

---

[2] Valadez denies that Ms. Jakobs' decision was the true reason he was not released or transferred from the Jail. (PRSUF2 ¶ 32).  Instead, he contends that other factors influenced the decision.  (Id.).  However, none of the evidence Valadez cites to support this position actually suggests another motive, other than some of his answers to interrogatories.  The relevant answers to interrogatories consist only of conclusory allegations that Sheriff's Department and Medical Clinic personnel kept Valadez in the Jail at the behest of Judge Pangman in order to increase Valadez's suffering.  (See Am. Valadez Decl., Ex. 2 (Pl.'s Answers to Interrogs.) at 28-30).  Conclusory allegations unsupported by factual data are not enough to create a genuine dispute of a material fact.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Therefore, the court treats this fact as undisputed.

8

for Summ. J. ("Vantassell Dep.") 7:11-10:13).  Dr. Vantassell gave Valadez some pain medication and an i.v., ran some tests, and released Valadez around 6 p.m. that day after Valadez demonstrated that he could drink without vomiting and asked to go home (Id. 10:14-19; 15:8-23; 27:4-8).

On or about July 24, 2004, Valadez filed his complaint in this court alleging both federal and state causes of action against defendants.  The matter was referred to United States Magistrate Judge Peter A. Nowinski pursuant to 28 U.S.C. §§ 636, et seq., and Local Rule 72-302.  All claims against Judge Pangman were dismissed on September 28, 2004.  Thereafter, defendants filed two separate motions for summary judgment.  The magistrate judge issued findings and recommendations recommending that summary judgment be granted as to all defendants.  (Magistrate Judge's Findings and Recommendations dated April 20, 2005).  On May 2, 2005, Valadez filed objections to the findings and recommendations.  On May 5, 2005 and May 13, 2005, defendants filed replies to Valadez's objections to the findings and recommendations.  The court reviews defendants' motions for summary judgment de novo.  See 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); Local Rule 72-304.

II.  Discussion

The court must grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary

9

judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The nonmoving party must show more than a mere "metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

    A.   Plaintiff's Federal Claims

Valadez has alleged civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986. To make out a claim under any of these statutes, Valadez must first demonstrate that he has been deprived of a federal right. Dang Vang v. Toyed, 944 F.2d 476, 479 (9th Cir. 1991)(plaintiff must show deprivation of a federal constitutional or statutory right to state a claim under 42 U.S.C. § 1983); Giannini v. Real, 911 F.2d 354, 359 (9th Cir. 1990)(same for a claim under 42 U.S.C. § 1985); Loehr v. Ventura County Cmty. Coll. Dist., 743 F.2d 1310, 1320 (9th Cir. 1984)("[A]n action under 42 U.S.C. § 1986 depends on a predicate violation of 42 U.S.C. § 1985. . . .").

To meet this burden, Valadez argues that defendants, acting under orders from Judge Pangman, violated his Eighth Amendment rights in three ways.[3]

---

[3] In his complaint, Valadez also referenced the Fourth and Fourteenth Amendments. However, in his oppositions to defendants' motions for summary judgment he specifically rests

10

First, Valadez argues that defendants - he does not specify which ones - violated his Eighth Amendment rights by forcing him to wait outside Judge Pangman's courtroom on August 23, 2002 while he was hungry and in pain.  This claim fails on at least two grounds.  For one, it fails to implicate any of the named defendants.  Valadez appeared and waited at the courthouse pursuant to Judge Pangman's order.  (See PRSUF2 ¶¶ 16-17, 19, 25).  Judge Pangman is no longer a party to this case.  (See Order dated September 28, 2004).  Though deputy Baca told Valadez not to leave the courthouse, Valadez was not remanded into the custody of the Sierra County Sheriff's Department that day. (PRSUF2 ¶¶ 19, 21, 25; Walker Decl. ¶ 9).  Baca is not a party to this case, and Valadez produces no evidence that any of the remaining named defendants were responsible for his "detention" outside the courtroom.

Furthermore, Valadez's "detention" outside the courtroom is not covered by the Eighth Amendment.  The Eighth Amendment protects prisoners from cruel and unusual punishment

---

his federal claims on violations of the Eighth Amendment and not any others.  The court is aware that it has a duty to "liberally construe 'inartful pleading' by pro se litigants." Washington v. Garrett, 10 F.3d 1421, 1432 n14 (9th Cir. 1993).  But the court does not believe it can be expected or should undertake to create, analyze, and evaluate arguments that have not been made by either party. Therefore, the court analyzes Valadez's claims in light of the Eighth Amendment only.

Valadez also contends that defendants violated his federal rights by purportedly violating state law and local policies.  This argument, however, is invalid on its face. Plaintiffs may not sue in federal court under § 1983 for violations of state law. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 974 (9th Cir. 2004).  Nor do §§ 1985 and 1986 cover violations of state law. Giannini, 911 F.2d at 359; Loehr, 743 F.2d at 1320.

11

during confinement.  Overton v. Bazetta, 539 U.S. 126 (2003).
Valadez was not in confinement when he was allegedly compelled to
wait outside the courthouse on August 23, 2002.  He was not even
in the custody of the Sheriff's Department.  (PRSUF2 ¶¶ 19, 21,
25).  Therefore, Valadez has no federal claim based on a
violation of the Eighth Amendment with regards to the time he
waited outside the courthouse on August 23, 2002.

Valadez further contends that the defendants affiliated
with the Jail violated his Eighth Amendment rights by
incarcerating him beyond the dictates of his sentence.  The Ninth
Circuit has held that "[d]etention beyond the termination of a
sentence c[an] constitute cruel and unusual punishment if it is
the result of 'deliberate indifference" to the prisoner's liberty
interest."  Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir.
1985)(citations omitted).  "Deliberate indifference" is
tantamount to a knowing disregard.  Gibson v. County of Washoe,
290 F.3d 1175, 1187 (9th Cir. 2002).

Valadez argues that he should have been credited for
"time served" waiting outside the courtroom on August 23, 2002
and for two full days of time served on August 9, 2002 and
September 13, 2002.  Because he was not, he argues that he was
detained too long.  Valadez produces no evidence to suggest that
his time outside the courthouse would qualify as time served
under the system used by the Jail.  He was not even in custody at
the time.  (See PRSUF2 ¶ 25).  Therefore, Valadez has no claim
for a violation of his Eighth Amendment rights based on the time
he spent waiting outside the courtroom.

However, Valadez's argument regarding the length of his

12

actual jail stay is more complex. Jail personnel kept Valadez incarcerated for twelve hours on August 9, 2002 and then from September 13, 2002 at 12:00 p.m. to September 17, 2002 at 12:00 p.m., for a total of 12 hours and four additional 24-hour periods pursuant to Judge Pangman's orders. (Id. ¶¶ 3, 13, 26, 45). According to Valadez, he should have completed his five-day jail sentence on September 16, 2002, having served one day on August 9, 2002 and then four consecutive "days" from September 13, 2002 to September 16, 2002. His calculation credits him with one full day of time served on August 9, 2002, and another full day of time served on September 13, 2002, although he was incarcerated for only portions of those two days. On this basis, Valadez argues he was wrongfully held in jail on September 17, 2002 for 12 hours, since he allegedly completed his five-day term at midnight the night before.

Some of the evidence presented to the court supports Valadez's argument and some evidence undermines it. Officer Biewerth apparently told Valadez that he would be credited for a full day's time served for the time he spent in Jail on August 9, 2002. (Bierwerth Dep. 91:20-92:11). Sheriff Adams also testified that inmates were often credited for a full day's time served for any portion of a day spent in Jail. (Adams Dep. 51:3-18). However, Adams also testified that he did not know how time served was calculated in the Jail but was aware that judges could sentence persons by the hour. (Id. 59:4-15). Officer Meadows states that Judge Pangman told her on August 9, 2002 that Valadez was to receive credit only for the hours he actually served. (Meadows Decl. ¶ 3). Whether this order was also meant to apply

13

to the rest of Valadez's sentence is unclear, though Jail personnel apparently interpreted it that way.

However, even if Valadez's calculation were correct, Valadez could not show that any of the defendants were deliberately indifferent to his allegedly prolonged detention. There is no record that Valadez protested the length of his incarceration while he was in Jail. Nor was his stay in Jail so long that Jail personnel would have had a reason to question the length of that stay. At most, Valadez was kept 12 hours past his allegedly proper release time <u>without</u> <u>protest</u> and consistent with an apparent court order to have plaintiff serve his sentence by the hour. To the extent any of the named defendants were involved with Valadez's detention, they did not violate the Eighth Amendment by briefly detaining someone they had reason to believe was to be legally detained pursuant to court order.

Finally, Valadez claims that defendants violated his Eighth Amendment rights by denying his requests for medical attention and for a transfer to a hospital or to another jail. "Denial of medical attention to prisoners constitutes an Eighth Amendment violation if the denial amounts to deliberate indifference to serious medicals need of the prisoners." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Prison officials show deliberate indifference when they deny, delay or intentionally interfere with medical treatment. <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 201 (9th Cir. 1989). However, medical malpractice does not amount to a violation of the Eighth Amendment. <u>Broughton v. Cutter Labs.</u>, 622 F.2d 458, 460 (9th Cir. 1980). Nor can a prisoner establish an Eighth Amendment violation on the basis of

14

a good faith dispute between the prisoner and prison officials over the necessity for or extent of medical treatment. Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

In the context of a claim for a violation of the Eighth Amendment, a "serious medical condition" exists if the failure to treat a prisoner's condition could cause significant injury or result in "unnecessary and wanton infliction of pain." Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Indicia of a "serious medical condition" include "(1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic or substantial pain." Id.(citation omitted).

The evidence establishes that Valadez complained of pain throughout his incarceration and vomited frequently. This behavior suggests that Valadez suffered from chronic pain. During his incarceration, Valadez also walked hunched over with a cane and complained that he was unable to eat and drink. (Bierwerth Decl. (Videotape); PRSUF2 ¶¶ 36, 53). These actions suggest that Valadez's daily activities were affected. [Nurse] Jakobs prescribed Valadez pain medication while he was incarcerated and Dr. Vantassell prescribed him additional pain medication shortly after Valadez's release. (PRSUF2 ¶¶ 43-44; Vantassell Dep. 10:14-19). Their actions suggest that a reasonable doctor would treat Valadez's condition. Therefore, there is at least a genuine issue of fact as to whether Valadez had a serious medical condition while he was incarcerated. Doty,

37 F.3d at 546.

However, the evidence cannot support a finding that any of the individual named defendants exercised deliberate indifference to Valadez's medical needs.  None of these defendants associated with the Jail denied Valadez access to medical personnel.  To the extent any of them were responsible for denying Valadez's requests for a transfer to a hospital or another jail, they deferred to Ms. Jakobs' decision that Valadez was fit for incarceration.  (Foxworthy Decl. ¶ 5).  Jail officials are permitted to rely on the opinions of medical personnel concerning the proper course of treatment for prisoners.  Joyner v. Greiner, 195 F.Supp. 2d 500, 506 (S.D.N.Y. 2002).  By choosing to rely on Ms. Jakobs' medical opinion, the relevant defendants did not demonstrate deliberate indifference to Valadez's medical needs.  Rather, they acted based on a good faith belief that Valadez's medical needs could be adequately met at the Jail.  See Mayfield, 433 F.2d at 874.

Valadez complains that Jail personnel never provided him with a padded chair and extra pillows, and waited two days to give him an extra mattress as per Ms. Jakobs' instructions.  (See PRSUF2 ¶¶ 57-58).  However, he does not contend that this oversight adversely affected his condition such that a transfer to another hospital or jail was necessary.  Even if Ms. Jakobs' continued medical clearance was erroneously premised on the assumption that these luxury items had been provided to Valadez, there is no evidence that Jail personnel - much less those named in Valadez's complaint - knowingly deprived Valadez of them in disregard of a risk to his health.  Gibson, 290 F.3d at 1187

16

(Prison officials act with "deliberate indifference only if [they] know[] of and disregard[] an excessive risk to inmate health and safety.")

Nor can Ms. Jakobs or Mr. Lang be found to have exercised deliberate indifference to Valadez's medical needs on the basis of the evidence submitted by Valadez. Valadez does not dispute that he was treated by Medical Clinic personnel. He simply disputes that he was able to receive sufficient treatment at the Jail. His argument in this regard hinges almost exclusively on a statement in Dr. Matthew's declaration and on the fact that Dr. Vantassell treated him for pain and dehydration after his release.

Based on his observations of the videotape of Valadez's incarceration, Dr. Matthews stated in his declaration that "it would have been appropriate for Mr. Valadez to have been provided with immediate medical care by a licensed physician at a hospital during his incarceration in September 2002. . . ." (Matthews Decl. ¶ 8). The statement merely expresses an alternative. Dr. Matthews did not state that he thought it was inappropriate to continue to incarcerate Valadez <u>at the Jail</u>. Furthermore, the evidence establishes that Valadez's requests for transfer were relayed to the Medical clinic and denied, and that Valadez was cleared for incarceration. (Bierwerth Decl. ¶ 7; Foxworthy Decl. ¶ 5). The fact that <u>another</u> appropriate treatment and placement option existed does not mean that Ms. Jakobs or Mr. Lang exercised deliberate indifference to Valadez's medical condition by electing to treat him at the Jail after determining he was fit for incarceration there.

17

This result is not affected by the fact that Valadez was treated for pain and dehydration by Dr. Vantassell after his release.  Valadez was given pain medication at the Jail, offered medicine for his upset stomach, and given food and water. (Bierwerth Decl., Attach. (Videotape); PRSUF 2 ¶¶ 40-41, 43-44). Except for receiving an i.v., which may not have been necessary before Valadez's release if he had chosen to drink more fluids at the Jail, Valadez received practically the same treatment from Dr. Vantassell - his doctor of choice - that he received at the Jail.  Perhaps, if Dr. Vantassell had been at the Jail while Valadez was incarcerated, he might have recommended giving Valadez an i.v.  Even so, a difference of medical opinion between medical professionals would not have amounted to deliberate indifference to serious medical needs.  Sanche v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Therefore, Ms. Jakobs and Mr. Lang were not deliberately indifferent to Valadez's medical needs when they chose to treat him at the Jail without giving him an i.v. or transferring him to another facility.

Valadez's federal claims against the County of Sierra, California Sierra County Jail, Sierra County Sheriff's Department and Western Sierra Medical Clinic also fail because Valadez cannot establish the violation of a federal right by any of their personnel.  See Canton v. Harris, 489 U.S. 378, 389-91 (1989)(no municipal liability under § 1983 absent a deprivation of federal rights); Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979)(treating municipal defendants sued under § 1985 the same as those sued under § 1983); see also Rojas v. Alexander's Dept. Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990)(private employers

sued under § 1983 for acts of employees treated like municipalities).[4]

B.  <u>Plaintiff's State-Law Claims</u>

The court has supplemental jurisdiction over Valadez's state-law claims pursuant to 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where the court has dismissed all claims over which it has original jurisdiction. <u>Voigt v. Savell</u>, 70 F.3d 1552, 1565 (9th Cir. 1995). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988). The balance of factors indicates that a case properly belongs in state court when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain. <u>Id.</u>

Here, Valadez's federal claims have all been dismissed prior to trial. Valadez has not presented, nor is the court aware of, any factors weighing in favor of the court's continuing exercise of supplemental jurisdiction over his state claims. Accordingly, the court declines to exercise supplemental

---

[4] Defendants also contend that neither the Sheriff's Department nor the Jail are proper parties to this action because "[n]aming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality." <u>Vance v. County of Santa Clara</u>, 928 F.Supp. 993, 996 (C.D. Cal. 1996). However, this argument is moot because there is no violation of a federal right on which to base Valadez's federal claims in the first instance.

19

1  jurisdiction over Valadez's state-law claims.

2        IT IS THEREFORE ORDERED that:

3        (1) defendants' motions for summary judgment as to plaintiff's claims for violations of his Eighth Amendment rights under 42 U.S.C. § 1983; conspiracy to violate plaintiff's civil rights under 42 U.S.C. § 1985; and neglect or failure to prevent a conspiracy to violate plaintiff's constitutional rights under 42 U.S.C. § 1986 be, and the same hereby are, GRANTED; and

9        (2) plaintiff's remaining state-law claims be, and the same hereby are, DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3).

12 DATED: June 1, 2005

*[signature: William B. Shubb]*

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE